509 F.2d 964
 88 L.R.R.M. (BNA) 3132, 166 U.S.App.D.C. 209,
76 Lab.Cas. P 10,759
 AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
Trans World Airlines, Inc., United Air Lines, Inc., and
American Airlines, Inc., Intervenors.
 Nos. 73--1828, 73--1874.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 11, 1974.
Decided March 17, 1975.
 
 Gary Green, Washington, D.C., with whom Daniel M. Katz, Washington, D.C., was on the brief, for petitioner. Barbara Thorson, Washington, D.C., also entered an appearance for petitioner.
 Robert L. Toomey, Atty., C.A.B., with whom Richard Littell, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel and Glen M. Bendixsen, Associate Gen. Counsel, C.A.B., were on the brief, for respondent.
 Edmund E. Harvey, Washington, D.C., was on the brief for intervenors.
 Before J. EDWARD LUMBARD*, Senior Circuit Judge for the Second Circuit, and McGOWAN and ROBINSON, Circuit Judges.
 Opinion for the Court filed by Senior Circuit Judge LUMBARD.
 LUMBARD, Senior Circuit Judge:
 
 
 1
 The Air Lines Pilots Association, International, (ALPA) petitions this court for review of Civil Aeronautics Board (CAB) Order 73--7--147, dated July 27, 1973, in which the Board gave interim approval to a capacity reduction agreement between American Airlines, Inc., Trans World Airlines, Inc., and United Air Lines, Inc., intervenors herein, which decreased the number of flights operated by those airlines between New York-Los Angeles, New York-San Francisco, Washington-Los Angeles, and Chicago-San Francisco.
 
 
 2
 The order also provided that a hearing be held by an Administrative Law Judge of the CAB to determine whether the CAB should grant final approval to the capacity reduction agreement. The interim approval was to expire on the earlier of March 25, 1974, or the date of final Board action upon conclusion of the above described hearing. The interim approval expired on March 15, 1974, as the Administrative Law Judge had not issued a decision by that date.[1] The agreement has remained in effect with only minor changes under the authority of CAB Order 74--7--105, dated July 24, 1974.[2] The Board's grounds for approval of this later order were different than those it relied upon to justify the order under review here.[3]
 
 
 3
 In its petition for review ALPA argues that the CAB should not have granted interim approval of the capacity reduction agreement without holding an evidentiary hearing to determine whether or not the antitrust implications of the agreement were outweighed by public interest considerations. ALPA also attacks the reasons that the Board gave in support of its decision. In addition, ALPA claims that the CAB should have required labor protective arrangements as a condition for interim approval of the agreement. ALPA also raises other issues,[4] but we feel that only the above issues merit extended discussion. We affirm the decision of the Board.
 
 
 4
 Since the order appealed from has expired, it could be argued that this case is moot. We feel, however, that since the reductions in service authorized by the order are still in effect, there is still a live controversy over whether the Board should have required labor protective arrangements as a prerequisite to approval of the order. We have previously considered CAB actions where the original order has expired when the reductions in service authorized by that order have remained in effect. ALPA v. CAB, 154 U.S.App.D.C. 316, 475 F.2d 900, 906 (1973) (ALPA I).
 
 
 5
 * ALPA argues that since capacity reduction agreements have antitrust implications, the CAB should have held an evidentiary hearing to obtain the facts necessary to decide if the agreements should be approved, even for an interim period. We disagree. We have previously outlined what the Board must do in cases such as this. In ALPA I we dealt with capacity reduction agreements between the same airlines that covered the same markets here involved. We noted in that case that 'there is no statutory requirement for a hearing,' and that 'the Board should have a degree of latitude in determining whether a full evidentiary hearing will be necessary in a particular case.' ALPA I, 475 F.2d at 903, 904. See also National Air Carriers Assn. v. CAB, 141 U.S.App.D.C. 31, 436 F.2d 185, 191--94 (1970) (NACA I); National Air Carriers Assn. v. CAB, 143 U.S.App. 140, 442 F.2d 862, 864--68 (1971) (NACA II). A hearing is needed only when there exist substantial and material disputed issues of fact or where the lack of a hearing will deprive the Board of the materials requisite for a rational decision. ALPA I, 475 F.2d at 904; NACA II, 442 F.2d at 868.
 
 
 6
 Here no evidentiary hearing was needed. In essence the Board was simply permitting the capacity reduction agreements that were the subject of ALPA I to continue in effect.[5]
 
 
 7
 The Board found that its action was justified because of the substantial fuel and cost savings that would flow e Secretary from approval of the agreement. In its brief in this court,[6] ALPA suggests that there will be no fuel savings because the carriers will expand their service in other markets. However, there was no showing that this had happened under the prior agreements. In any event the Board was aware of the potential problem and concluded that it could be adequately dealt with if it arose because the Board was retaining jurisdiction over the agreements. We have previously upheld the CAB's rejection of such an argument. ALPA I, 475 F.2d at 904. Here we see no reason to reach a different result.
 
 
 8
 ALPA also claims that the cost savings are not in the public interest because they expand airline profits. While it is probably true that cost savings that allowed airlines to reap excessive profits would be against the public interest, cost savings that enable airlines to make a reasonable rate of return on their investments are not. Here the CAB concluded that the cost savings would be desirable. ALPA does not attempt to argue that the CAB had inadequate data or that there are substantial factual disputes involved in this case. It basically argues that the CAB reached the wrong decision.
 
 
 9
 The CAB concluded that interim approval of the agreements would be in the public interest because the benefits from cost and fuel savings would outweigh any adverse impact the agreements might have, at least over the brief period covered by its interim approval. We do not think that the CAB abused its discretion in approving these agreements without holding an evidentiary hearing. Its interim approval of the agreement is sufficiently supported by the evidence that it had before it.
 
 II
 
 10
 ALPA's major concern, of course, is the Board's refusal to impose labor protective conditions as a prerequisite for approval of the capacity reduction agreement. It claims that it made a strong showing that some 84 pilots would be affected by the agreement and that, as a result, the CAB should have imposed labor protective conditions, or at the very least, that it should have held a hearing to determine the correctness of ALPA's claim.
 
 
 11
 We have previously reviewed the CAB's policies with respect to labor protective conditions. See ALPA v. CAB, 161 U.S.App.D.C. 199, 494 F.2d 1118, 1127--32 (1974) (ALPA II); ALPA I, 475 F.2d at 904--06. Our decisions require the CAB to give ALPA an opportunity to make an affirmative showing that a need for labor protective conditions exist. They also require us to determine whether the CAB rationally concluded that such conditions were not necessary. ALPA II, 494 F.2d at 1130; ALPA I, 475 F.2d at 906.
 
 
 12
 In the past it has been the CAB's policy to limit imposition of labor protective conditions to agreements involving substantial employee dislocations, e.g., mergers. See ALPA II, 494 F.2d at 1129--30. When capacity reduction agreements similar to this one were approved, the CAB did not impose labor protective conditions. See ALPA I; note 7 infra. Here the Board concluded that there would only be a 'very limited' effect on employees because of the relatively short period for which interim approval was given. We cannot say that this finding is not rational or not consistent with the Board's policy of providing labor protective conditions only in cases where a substantial effect on employees is likely.[7] We think that the Board gave adequate consideration to the need for the imposition of labor protective conditions.
 
 
 13
 Our approval of the Board's action does not, however, in any way limit the Board if it should decide to reconsider its approval of the agreements and impose labor protective conditions as a prerequisite for continued approval of the agreements. The Board's practice of retaining jurisdiction over agreements such as these is a wise one and the Board should not hesitate to reconsider its decision in a case where there may be a substantial change in circumstances.
 
 
 14
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to Title 28 U.S. Code Section 294(d)
 
 
 [1]
 The initial decision of E. Robert Seaver, Administrative Law Judge, was dated November 6, 1974, and concluded that the agreement in question was adverse to the public interest and should not be approved. The Board has not taken final action with respect to this decision
 
 
 [2]
 This order is currently undergoing review by another panel of this court. United States v. CAB, No. 74--1900 (submitted on the briefs for consolidation and simultaneous decision with A.L.P.A. v. CAB, No. 73--2181, and United States v. CAB, No, 73--2276, both dealing with a 20-market fuel-justified capacity reduction and which were argued before this court November 25, 1974)
 
 
 [3]
 This later order approved a capacity reduction agreement on the basis of the need to conserve scarce supplies of aviation fuel. Although the agreements authorized by this order expired on December 14, 1974, the Board has authorized the carriers to submit proposals renewing the agreement. CAB Order 74--11--35 (Nov. 7, 1974). The carriers submitted, on November 22, 1974, a joint application for approval of agreement, similar to the current agreement, covering the period from Feb. 1 through June 14, 1975. The Board, in its Order 75--1--140, dated January 31, 1975, granted such approval
 
 
 [4]
 ALPA also advances a somewhat strained procedural argument that we find unpersuasive. The argument is based on the following facts: On July 26, 1973, the CAB directed its staff to inform the parties that it intended to grant interim approval of the agreement. The staff notified the carriers on that date. On July 27, the CAB officially adopted Order 73--7--147, its staff informed ALPA of the action, and ALPA filed its petition for review. The clerk of this court docketed the petition and transmitted a copy to the Board on July 30; it was received on August 7. The Board's order was published on August 1; it was officially adopted at a Board meeting held on September 5, 1973
 ALPA argues that the July 26 telephone calls constituted an order of the CAB and that since they were made before any official Board action, they were 'lawless individual action.' ALPA apparently feels that the order is somehow fatally tainted by this procedure. We disagree. It appears that the airlines were only told that the Board would issue an order granting interim approval, not that it had done so. Such an action does not constitute official action by the Board and the Board could have changed its mind. See Eastern Air Lines, Inc. v. CAB, 271 F.2d 752 (2d Cir. 1959), cert. denied, 362 U.S. 970, 80 S.Ct. 954, 4 L.Ed.2d 901 (1960).
 ALPA next contends that the Board was deprived of jurisdiction over this case when ALPA's petition for review was docketed on July 30, 1973. See 49 U.S.C. 1486(d). It argues that as a result the Board had no jurisdiction to adopt its order on September 5 and that the order is defective for that reason. We reject this argument also.
 All that the Board did on September 5, was to ratify actions taken earlier by its notation procedure. Under that procedure the members of the Board send tally sheets to the Minutes Section which indicate how they vote on a proposed action. The action is treated as adopted once all of the votes are received and a majority has concurred. Brief for Respondent at 44--45 n. 35. The Board's adoption of the order under review here by notation on July 27 was sufficient to constitute official action by the Board. See Saturn Airways, Inc. v. CAB, 155 U.S.App.D.C. 151, 476 F.2d 907, 909 (1973). There is no question that the Board had jurisdiction of this matter at that time. While the transmittal of a petition for review to the CAB may deprive the Board of jurisdiction to take substantive action in a matter, it does not deprive it of the power to adopt formally orders that it has previously adopted by the notation procedure.
 
 
 [5]
 There were minor differences in the two sets of agreements. For example, the instant agreement allowed somewhat more extensive cutbacks in service
 
 
 [6]
 In the comments that ALPA submitted to the Board on the proposed capacity reduction agreement, ALPA only discussed the need for labor protective conditions. See Joint Appendix at 37--47
 
 
 [7]
 Even if ALPA's predictions were accurate it is arguable that the impact of the agreements on employees would not be substantial. Moreover, although the Board did not say so in its order, it may have been influenced by the fact that ALPA's submission to it, which explained how ALPA calculated the number of layoffs, included a section dealing with the predecessor agreements. ALPA at one time claimed that several hundred employees would be affected by those agreements. Yet at a hearing held pursuant to ALPA I, it conceded that the agreements had not resulted in any pilot lay-offs. The Board did advance this reason as one ground for refusing to stay its order pending this appeal. CAB Order 73--9--61 (Sept. 14, 1973) in Joint Appendix at 149, 152--53