**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

Mohawk Airlines, Inc., and Command Airways, Inc., Intervenors.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

Mohawk Airlines, Inc., and Air North, Inc., Intervenors.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

Nos. 24062, 24063, 24226.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1970.

Decided Jan. 14, 1972.

Respondent's Petition for Rehearing Denied March 22, 1972.

Intervenors' Petition for Rehearing Denied April 13, 1972.

Mr. Gary Green, Washington, D. C., for petitioner.

Mr. Robert L. Toomey, Atty., Civil Aeronautics Board, with whom Messrs. R. Tenney Johnson, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, Litigation and Research, Stephen H. Lachter, Atty., Civil Aeronautics Board, and Howard E. Shapiro, Atty., Department of Justice, were on the brief for respondent.

Mr. John H. Quinn, Jr., Washington, D. C., with whom Mr. Frank J. Costello, Washington, D. C., was on the brief, for intervenors in Nos. 24,062–3. Mr. Russell A. Garman, Jr., Washington, D. C., also entered an appearance for intervenors in Nos. 24,062–3.

Before FAHY, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

These cases concern challenges by the Air Line Pilots Association (ALPA) to

orders of the Civil Aeronautics Board (CAB) which authorize certain certificated carriers[1] to suspend service at specified locations; approve agreements between those certificated carriers and certain non-certificated ("taxi" or "commuter") carriers[2] by which the latter are to provide replacement service at those locations; and provide that the suspensions granted to the certificated carriers will terminate if the non-certificated carriers fail to provide specified levels of replacement service.[3]

Even were the challenged orders considered as immediately authorized by statutory provisions concerning suspension of service[4] and approval of agreements among air carriers,[5] their ultimate validity depends upon the relationship between the certification requirement and the Board's exemption authority. If it is not proper for non-certificated carriers to perform the replacement services contemplated by the Board's orders, then the suspensions granted to the certificated carriers are void on their own terms (since they are conditioned on performance of the replacement services), and the agreements between the certificated and non-certificated carriers should not have been approved.

Many of petitioner's arguments seem to be relevant only as a challenge to the entire scheme of non-certificated operations authorized by the Board's exemptive regulations. Such arguments, however, are more appropriately made (initially, at least) in a rule making forum. These cases do not require that we make a determination of such wide scope. We are concerned with the Board's exemption authority only as it relates to the three non-certificated carriers in these cases.

## I

We begin from the basic premise that an exemption granted pursuant to 49 U.S.C. § 1386(b) (1)[6] remains valid

1. 49 U.S.C. § 1371(a) (1970) provides:
   No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation.

2. 49 U.S.C. § 1386(b) (1) (1970) provides:
   The Board, from time to time and to the extent necessary, may . . . exempt from the requirements of this subchapter or any provision thereof, . . . any air carrier or class of air carriers, if it finds that the enforcement of this subchapter or such provision . . . is or would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest.
   Pursuant to this provision, the CAB has issued regulations (14 C.F.R. § 298; 17 Fed.Reg. 635) creating two classifications of air carriers—"air taxi operators" and "commuter air carriers"—which operate aircraft weighing less than specified amounts and which are exempt from many of the statutory requirements imposed on other air carriers, including the requirement of certification.

3. In Nos. 24,062 and 24,063, the certificated carrier is Mohawk Airlines, Inc.,

and the non-certificated carriers are Command Airways, Inc., and Air North, Inc., respectively. In No. 24,226, the certificated carrier is Northeast Airlines, Inc., and the non-certificated carrier is Executive Airlines, Inc. The locations in each case are in the northeastern United States.

4. 49 U.S.C. § 1371(j) (1970) provides:
   The Board may, by regulations or otherwise, authorize such temporary suspension of service as may be in the public interest.

5. 49 U.S.C. § 1382 provides:
   (a) Every air carrier shall file with the Board a true copy . . . of every contract or agreement . . . affecting air transportation. . . .
   (b) The Board shall by order disapprove any such contract or agreement, whether or not previously approved by it, that it finds to be adverse to the public interest, or in violation of this chapter, and shall by order approve any such contract or agreement, or any modification or cancellation thereof, that it does not find to be adverse to the public interest, or in violation of this chapter.
   . . .

6. See note 2, supra.

only so long as the statutory prerequisites for its grant—findings that certification would be an "undue burden" and "not in the public interest"—continue to be valid.[7] The fact that Congress has established certification as the heart of the regulatory scheme requires that the words "to the extent necessary" in Section 1386(b)(1) be read as incorporating a temporal limitation on exemptions. Departure from the regulatory norm, in other words, is to be tolerated only so long as the circumstances warrant.[8]

■ Since an exemption under Section 1386(b)(1) is of limited duration, lapsing when the statutory prerequisites for its grant cease to exist, the Board's point that its orders "did not purport to alter or add to the existing exemption[s]" is not well taken. Assuming *arguendo* that the carriers had, prior to the Board's orders, been operating under valid exemptions, and granting that the orders did not alter or enlarge those exemptions, the exemptions may have nevertheless ceased tᴏ be valid by reason of changes in the carriers' operations occurring after the exemptions were granted.

■ The central issue presented by ALPA's challenge to the orders under review, then, is whether the non-certificated carriers can *continue* to operate under their preexisting exemptions, given the changes in their operations that are contemplated by the orders. We are unable to resolve that issue on the present record, however, because there are no findings by the Board as to whether the statutory prerequisites for exemption continue to exist.

The findings in the record are limited to the economics of service over the routes at issue. The Board's conclusion, as characterized in its brief, was that the certificated carriers' operations "are uneconomic and that commuter services will provide more flights at convenient times with resultant better service to the public." While such findings indicate the Board's belief that the replacement services will be in the public interest, they do not speak to the issue of the continuing validity of the exemptions.

If we are to determine whether the pre-existing exemptions remain valid subsequent to the Board's orders, we must have, instead of agency findings on the economics of service at the relevant locations, findings on the statutory issues of (1) whether certification would be an undue burden on the carriers, and (2) the public interest in certification in these circumstances, which is distinct from the public interest in having the services provided. Since there are no findings on these issues, we remand for hearing and determination with respect to them.

## II

■ By remanding these cases, we do not require the Board to make findings as to the continued existence of the statutory prerequisites for exemption whenever a non-certificated carrier expands its operations, with or without the approval of the agency.[9] It is clearly desirable that the Board be able to formulate general exemptive regulations which apply to a class of air carriers and authorize them to operate within certain limits. The alternative would be an ad-

---

7. This premise is implicit in American Airlines v. CAB, 98 U.S.App.D.C. 348, 235 F.2d 845 (1956). See Part III, *infra*.

8. The Board's own regulations appear to recognize this point. Section 298.13 of the regulations cited in footnote 2, *supra*, is entitled "Duration of exemption" and provides:
   The exemption from any provision of title IV of the Act provided by § 298.11 [exemption of air taxi operators] shall continue in effect only until such time as the Board shall find that enforcement of such provision would be in the public interest or would no longer be a burden on air taxi operators. . . . 14 C.F.R. § 298.13.

9. Specifically, we do not suggest that a hearing is necessarily required every time a non-certificated carrier begins to compete with a certificated carrier over one of the latter's routes, as was apparently the case here prior to the Board's orders.

ministrative morass in that there would have to be a hearing every time an exempt carrier desired to provide service on a new route or increase service on an old one.

The spectre of administrative burdens, however, cannot be allowed to obscure the danger that an exemption granted under general regulations will shield carriers from certification long after the scale of their operations renders exemption inconsistent with the regulatory scheme. It is necessary, in short, to balance considerations of administrative efficiency against the requirements of an effective regulatory system.

At this point, we will not attempt to determine that balance for every case by defining, precisely and inclusively, the situations in which the Board must hold hearings to probe the continuing validity of previously granted exemptions. A precise, inclusive definition is not necessary to the disposition of these cases— for there are few situations in which the need for a hearing could be more clear.

The reason is that the non-certificated carriers are undertaking to provide services which were previously the subject of the certification process. 49 U.S.C. § 1371(d)(1) requires that the CAB "shall issue a certificate" authorizing a carrier to provide air transportation service if and only if the Board finds that the carrier is "fit, willing, and able to perform such transportation properly . . . and that such transportation is required by the public convenience and necessity."

Thus, when the Board originally granted the certificates authorizing the carriers to serve the locations at issue in these cases, it presumably found that such transportation as those carriers were fit, willing, and able to perform was required by the public convenience and necessity. There is no indication that the Board has made any further findings which weaken or contradict those it made in granting the original certificates. We must assume, then, that the air transportation which the certificated carriers have been providing is required by the public interest.[10]

■■ It is implicit in the regulatory scheme that service required by the public interest should whenever possible be provided by a certificated carrier, which has been found fit, willing, and able to render it, rather than by an exempt carrier, as to which there is no such finding. The reason, obviously, is greater assurance that required service will be ably provided. That is not to say that such service can never be provided by an exempt carrier. The arrangements in these cases are not *per se* invalid. The point is, rather, that in a situation where a carrier as to which there is no finding of fitness undertakes to provide required services previously performed by a carrier found to be fit, there is a presumption in favor of certification which requires that the Board conduct hearings to re-examine the validity of the non-certificated carrier's exemption.

It might be noted, furthermore, that insofar as a non-certificated carrier received its exemption under Section 1386(b)(1) on the grounds that certification would be "an undue burden . . . by reason of the limited extent" of its operations, that finding is called into question when the carrier undertakes service previously subject to the certification process. It is unlikely that service which is the subject of certifica-

---

10. Western Air Lines v. CAB, 122 U.S. App.D.C. 81, 351 F.2d 778 (1965), a case involving termination of certificated service, indicates that previous findings that transportation service is required by the public convenience and necessity, made at the time a certificate was granted, have continued force and effect in subsequent proceedings (at 781–782) :
"What the Board in 1960 had unanimously found to be the public interest considerations as to service needs was simply waved aside in 1963. . . . the Board's unanimous 1960 conclusion that mainland-Hawaii service was required by the public convenience and necessity should not be ignored by this court, and should not have been ignored by the Board in 1963."

tion can be service of a "limited extent" within the meaning of the statute.

■ We hold, in sum, that, when a non-certificated carrier substantially takes over the route of a certificated carrier, there is need for a hearing to determine whether the statutory conditions for exemption from certification, which were presumably present when the exemption was granted, continue to exist. We leave open, for determination on a case-by-case basis as new fact situations arise, the difficult question of what other situations might call for such a hearing.

### III

American Airlines v. CAB, 98 U.S. App.D.C. 348, 235 F.2d 845 (1956), cert. denied, Air Coach Transport Ass'n v. American Airlines, Inc., 353 U.S. 905, 77 S.Ct. 668, 1 L.Ed.2d 666 (1957), amply supports, if indeed it does not require, the disposition we make of these cases. That case concerned a Board order which, by abolishing an agency requirement that non-certificated carriers provide only irregular service, thereby allowed them to operate on regular schedules. As in the present cases, the non-certificated carriers had been operating under exemption authority for a considerable time prior to the Board's action. Also as in the present cases, the Board's findings mainly concerned the economics of service,[11] containing little of relevance to the issues of exemption under Section 1386(b) (1).[12]

Judge Prettyman, writing for a unanimous court, implicitly adopted the premise set forth above, namely, that changed circumstances can call into question prior findings on the statutory prerequisites for exemption. Further, the court found it significant, in terms of requiring the Board to renew its findings, that the challenged order authorized the non-certificated carriers to perform services (regularized transportation) commonly subject to the certification process:

> We fully realize that the irregular carriers have been operating under exemption authority for many years, and it seems possible, if indeed not probable, that the Board has not heretofore stated its conclusions as to undue burden and public interest in any more extensive form than it does now. But until now these carriers have not operated with any semblance of regularity. They were truly irregular carriers, as they were called. Now they are to become supplemental carriers and no longer irregular. *They are moved much closer to the certificated services. The burden of certification is no longer obvious.* Id. at 852–853 (emphasis added)

In order that it could properly perform its review function, the court remanded for findings as to the continued existence of the statutory prerequisites for exemption:

> We have examined the opinion and the order [of the Board] with care, but we cannot ascertain from them what the Board deems to be the limited extent of the operations of the supplemental carriers which would make a certification an undue burden on the carriers, nor can we determine what unusual circumstances affecting the operations of the supplemental carriers would make certification an undue burden on these carriers. Neither can we ascertain why the Board is of opinion that the certification of these supplemental carriers is not in the public interest. . . . We think the Board must make findings in the foregoing respects in order that the court, in the exercise of its review function, may determine whether the grant of

---

11. "It found that the elimination of the restriction against regularity would help the public and strengthen the supplemental carriers, and that it would aid in the administration and enforcement of regulations." 235 F.2d at 849.

12. There were, in addition to a legally inadequate finding as to undue burden, only conclusions phrased in the language of the statute, unsupported by findings.

the exemption is within the statutory authority of Section 416(b). Id. at 851–852.

The necessity for a similar disposition of the present cases is clear. Not only have the exempt carriers "moved much closer to the certificated services," but they are in fact performing services which have been the subject of certification proceedings. A remand for hearings is similarly necessary so that we may, in the exercise of our review function, "determine whether the grant of the exemption is within the statutory authority."

In remanding for hearings and findings on the question of whether the non-certificated carriers presently providing the replacement services are entitled under these circumstances to exemption from certification, we think the Board may, in its discretion, permit the existing arrangements to continue pending final resolution of these issues. *See* Kodiak Airways, Inc. v. CAB, 144 U.S. App.D.C. 371, 447 F.2d 341 (1971).

There is an additional issue in No. 24,226, namely, whether the Board erred in denying, without a hearing, ALPA's request that it impose conditions for the protection of Northeast Airlines employees who might be adversely affected by the suspensions. We do not indicate an opinion as to whether protective conditions should have been imposed at the time the Board issued its order, or as to whether a hearing on the issue should have been conducted at that time. We do think, however, that *if* the Board concludes, after hearings upon remand, that the exemptions of the non-certificated carriers remain valid and that the suspension-substitution agreements are to continue in effect, it should then conduct hearings on the need for protective labor conditions, assuming that ALPA renews its request for them.

This is no longer a case in which the impact of the suspensions on airline employees need be determined solely on the basis of expert predictions. *See* Delta Airlines, Inc. v. CAB, 147 U.S.App.D.C.

272, 455 F.2d 1340 (1971). The agreements have been in effect for a substantial period prior to the issuance of this opinion, and there should be hard evidence on which to make a determination. In light of this fact, and of the Board's concession that protective conditions have been imposed in other cases involving suspension of service, we think that if the Board re-approves the suspension-substitution agreements, ALPA would be entitled to demonstrate that a need for protective conditions exists.

The cases are remanded for further proceedings consistent with this opinion.

It is so ordered.