659 F.2d 941
 DHL CORPORATION, Petitioner,
Gelco Courier Services, Inc., Petitioner-Intervenor,
v.
CIVIL AERONAUTICS BOARD, Respondent,
Pan American World Airways, Inc., Respondent-Intervenor.
 Nos. 79-7416, 80-7133 and 80-7200.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1981.
Decided Oct. 19, 1981.
 
 James I. Campbell, Jr., Cook, Purcell, Hansen & Henderson, Washington, D. C., for DHL Corp.
 Ralph L. Kissick, Washington, D. C., argued for Gelco Courier Services; Zuckert, Scoutt & Rosenberger, Washington, D. C., on brief.
 John L. Richardson, Washington, D. C., argued for Pan American World Airways; Robert S. Venning, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Verner, Liipfert, Bernhard & McPherson, Washington, D. C., on brief.
 Thomas L. Ray, Washington, D. C., argued for the CAB; Mary McInnis, Sanford M. Litvack, Asst. Atty. Gen., Washington, D. C., on brief.
 On Petition for Review of Civil Aeronautics Board Orders 79-1-6, 79-6-147, 80-2-148, 80-4-54, 80-5-32.
 Before POOLE and BOOCHEVER, Circuit Judges and GILLIAM,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 After Pan American World Airways (Pan Am) and British Airways filed tariffs with the Civil Aeronautics Board (CAB) providing for a higher tariff rate for courier baggage, two courier companies (essentially freight forwarders or resellers of baggage space whose employees accompany bulk commercial documents shipped as air passenger baggage) filed complaints against the proposed tariffs. They alleged that the tariffs were unjustly discriminatory, excessive and anti-competitive. The CAB ultimately dismissed the complaints and the rates became effective. One of the companies filed a petition for review of the CAB orders. The other company and one airline intervened. We hold that the CAB did not abuse its discretion in dismissing without an investigation the allegations in the complaints concerning unjust discrimination and anti-competitiveness. We hold, however, that the allegation that the rates were excessive should have been investigated.
 
 STATEMENT OF FACTS
 
 2
 On December 18, 1979, Pan Am filed proposed tariffs for domestic, overseas, and international travel which applied to courier baggage.[1] These tariffs applied the Excess Baggage Case formula[2] to an alleged typical weight of 30 kilograms per piece of courier baggage. Additionally, couriers were not granted a free baggage allowance, other than a maximum of two bags for personal use only. Other passengers are allowed to ship two bags free without regard to the ownership of the contents. DHL Corporation (DHL) and Gelco Courier Services, Inc. (Gelco), filed complaints alleging inter alia that the tariff was: (1) not susceptible to uniform enforcement because of the indefiniteness of the term "courier;" (2) not justified by the costs and unreasonable because there was no basis for either using a rate based on weight or concluding that courier bags weigh an average of 30 kilograms when in fact they usually weigh less; and (3) anti-competitive because it gave the airline's own parcel express service an unfair advantage.
 
 
 3
 In Order 80-2-148, the CAB dismissed the complaints and permitted the tariffs to become effective. The CAB rejected the complainants' arguments because: (1) although recognizing minor ambiguity in the definition of "courier,"[3] DHL did not prove that it will be problematic in practice and the CAB noted that DHL tenders its baggage in colorful containers; (2) courier baggage costs more to handle than passenger baggage and the weight of the average courier bag is heavier than the average passenger bag; and (3) Pan Am was not in direct competition with the couriers. Id.
 
 
 4
 On March 4, 1980, British Airways filed a tariff to match Pan Am's courier tariff. DHL and Gelco filed complaints, but in Order No. 80-4-54 the CAB dismissed the complaints for the reasons expressed in its previous dismissal concerning Pan Am's tariff. DHL filed petitions for review of the CAB orders.[4]
 
 I. UNJUST DISCRIMINATION
 A. Introduction
 
 5
 FAA § 404(b), 49 U.S.C. § 1374(b),[5] prohibits airlines from creating tariffs that cause unjust discrimination. FAA § 1002, 49 U.S.C. § 1482, concerns the enforcement of the various provisions of the Federal Aviation Act. Under that section, the CAB is required to investigate a complaint which provides reasonable grounds to believe that the Act has been violated. If the complaint does not state facts which warrant an investigation, the complaint may be dismissed without a hearing.
 
 
 6
 In cases of rate discrimination, the complaining party bears the burden of showing that the particular rates are discriminatory.[6] If the complainant fails to meet this burden, the CAB may properly dismiss the complaint without a hearing.[7] Even if the complainant meets this burden, the CAB may dismiss the complaint without a hearing if the CAB affirmatively shows that the tariff is justified for public policy reasons or in terms of established CAB precedent or policy and the relevant facts.[8]
 
 
 7
 Because no hearing was held, the standard of review is whether the CAB abused its discretion in failing to order an investigation and dismissing the complaint without a hearing.[9]
 
 
 8
 The complainants contend that the courier baggage tariff unjustly discriminates in two respects. First, they contend that the tariff violates the rule of equality because couriers are charged a higher rate for the same services rendered other passengers. Second, they argue that the tariff unjustly discriminates because it cannot be fairly administered. For the reasons discussed below, we reject each of these arguments.
 
 B. Rule of Equality
 
 9
 FAA § 404(b), 49 U.S.C. § 1374(b), prohibiting unjust discrimination in rates, contains the rule of equality. Moss v. C.A.B., 521 F.2d 298, 310 (D.C.Cir.1975) cert. denied, 424 U.S. 966, 96 S.Ct. 1460, 47 L.Ed.2d 732 (1976).[10] The right to be treated fairly and nondiscriminatorily by a common carrier is an expression of the persuasive precept of fairness between government and governed and is derived from the common law of carriers. Trailways of New England, Inc. v. C.A.B., 412 F.2d 926, 931 (1st Cir. 1969). The rule and § 1374(b) is violated
 
 
 10
 when different fares or rates are charged for like and contemporaneous services under substantially similar circumstances and conditions.
 
 
 11
 Aloha Airlines, Inc. v. C.A.B., 598 F.2d 250, 263 (D.C.Cir.1979). A prima facie case of unjust discrimination can be established where: (1) there is a large price differential for substantially similar purposes, (2) the differential is based upon status rather than a transportation related factor, and (3) the fares cause a significant injury. Trailways, 412 F.2d at 932-33. The CAB found that a prima facie case had not been established because the services to a passenger and a courier are not substantially similar.
 
 
 12
 The complainants argue that the tariff draws a distinction based merely on status by dividing passengers into two categories: courier passengers and all others. A greater charge is levied upon courier baggage than passenger baggage. The basis for the distinction is the ownership of the items within the baggage. They argue that because the courier has the same contractual relationship with the airline as any other passenger, the charge for courier baggage should equal the charge for passenger baggage. Thus, charging couriers a higher rate for shipment of their baggage constitutes impermissible discrimination.
 
 
 13
 The CAB and Pan Am respond that typical passengers and couriers do not receive similar services. Couriers receive a unique service, freight service with handling advantages enjoyed only by passengers. Moreover, the carrier's transport of a passenger's baggage is incidental to the passenger's own transportation. By contrast, transport of courier baggage is the primary service purchased, and the courier's own carriage is secondary. Typical passengers carry their own baggage.[11] Typical couriers carry the baggage of others for a profit so that their use of the airplane is similar in that respect to cargo shippers. We believe that the CAB did not abuse its discretion in determining that couriers and passengers are not similarly situated. Moreover, although the complainants argue in their briefs that the two are similarly situated, DHL's counsel at oral argument acknowledged that it was not unreasonable for the airlines to distinguish couriers from typical passengers although couriers should be treated the same as other passengers with many bags.[12] Since we conclude that the service provided to couriers is not the same as that of ordinary passengers, we need not discuss whether the fare differential was justified on economic or public policy grounds.
 
 C. Unfair Administration
 
 14
 DHL also contends that the courier baggage tariff is unjustly discriminatory because it cannot be fairly administered. The CAB, although recognizing some minor ambiguity in the definition of courier, rejected this argument because DHL did not demonstrate that the "definitional problems will prove problematic in practice." Order 80-2-148 at 3.
 
 
 15
 DHL's position is that the carriers will be unable to distinguish who is a courier and who is not. DHL's argument is premised upon an admission by Pan Am's counsel that it might not know who is a courier. The counsel, however, stated that typically Pan Am does know who is a courier because the courier does business on a regular basis or, if not, a courier could be easily recognized because of the tendering of a large number of distinctive bags.[13] Moreover, at oral argument DHL's counsel stated that he did not suggest that Pan Am cannot tell a DHL courier in most cases.
 
 
 16
 DHL has failed to demonstrate that identification of a courier will prove difficult in most cases. Rate distinctions have previously been approved which require the airline to identify a particular characteristic about its passenger.
 
 
 17
 In Flores v. Pan American World Airways, 259 F.Supp. 402 (D.Puerto Rico 1966), the carrier refused to permit a passenger to board without proof that her infant was under two years of age and thereby entitled to travel with her on a single adult fare ticket. Although other similarly situated passengers may have been permitted to board without proof of age, the court found no unjust discrimination. We fail to see how the airlines will have much more difficulty deciding who is a courier than who is under two years old. Thus, we hold that the CAB did not abuse its discretion in failing to investigate this allegation in the complaint.
 
 II. UNREASONABLE RATES
 
 18
 The FAA § 404, 49 U.S.C. § 1374(a)(2) requires that all rates be "just and reasonable." It is a longstanding principle that rates should be geared to the costs of service. Order 76-3-81 at 5.
 
 
 19
 Reasonable rates, in this regulated industry as in others, are those which are as low as possible but still allow the industry to provide "adequate and efficient service" and earn a reasonable rate of return, thus assuring its ability to attract necessary capital in the future.
 
 
 20
 Moss v. C.A.B., 521 F.2d 298, 308 (D.C.Cir.1975), cert. denied, 424 U.S. 966, 96 S.Ct. 1460, 47 L.Ed.2d 732 (1976).
 
 
 21
 The CAB found that the rate differential between passenger and courier baggage was economically justified and therefore not unreasonable because courier baggage on the average costs the airlines more to handle than passenger baggage. Order 80-2-148 at 3. The CAB noted that couriers tender, on the average, a greater number of bags of heavier weight. Id. The CAB approved the use of 30 kilograms as the average weight for a piece of courier baggage. It then approved the multiplication of that weight by the rate approved in the Excess Baggage Case, 0.7% of the economy passenger fare per kilogram of baggage, to produce a flat rate for courier baggage.
 
 
 22
 DHL and Gelco contend that the courier baggage tariff is not cost-justified because the approved rate rests on two erroneous assumptions: (1) courier baggage weighs, on the average, 30 kilograms while passenger baggage weighs 12 kilograms[14] and (2), assuming arguendo that there is a difference in weight, it does not justify the price differential.
 
 
 23
 The CAB in its order did not expressly find that the average weight of courier baggage is 30 kilograms. Pan Am's tariff justification stated that it had determined, and DHL conceded, that the average weight is approximately 30 kilograms. In approving the requested tariff, the CAB tacitly accepted this figure. DHL contends that it never conceded the weight figure. Even assuming that DHL implicitly accepted this figure, GELCO clearly did not. In its complaint, GELCO alleged:
 
 
 24
 Pan Am's determination that the average weight per piece of a courier shipment is 30 kilograms is patently unfair to Gelco. Gelco shipments average approximately 23 kilograms. If it were required to pay Pan Am's proposed charge, Gelco would in essence by paying for 7 kilograms of excess per piece which it is not using.
 
 
 25
 The only basis for concluding that a 30 kilogram figure was reasonably accurate is a statement by a Pan Am witness, at a prehearing conference for investigation of an earlier proposed tariff, that a survey had been conducted and a 30 kilogram figure was derived. At the same time, Pan Am stated that it could produce information regarding the average weight of courier baggage. In any event, the details of the alleged survey were not presented to the CAB so that it had no basis to judge its accuracy. Gelco stated in its complaint that the average weight of its shipments was 23 kilograms. Because there was no evidence before the CAB that the average weight was 30 kilograms and Gelco alleged that the weight was 23 kilograms, we believe that the acceptance of the 30 kilogram figure without an evidentiary investigation was an abuse of discretion.[15]
 
 
 26
 We do not believe, however, that the CAB abused its discretion in approving a flat rate for baggage of the applicable weight times the formula established in the Excess Baggage Case. The complainants contend that: (1) the CAB inappropriately applied the Excess Baggage Case because it requires that any increased rate be based on the space a piece of baggage occupies rather than its weight and (2) the Excess Baggage Case is not applicable.
 
 
 27
 The Excess Baggage Case arose from a request that the CAB investigate the lawfulness of tariffs which established the baggage allowances and excess-baggage charges applicable to international flights. The tariffs under consideration: (1) allowed, without additional charge, 30 kilograms of baggage for first class passengers and 20 kilograms for economy passengers and (2) charged excess baggage at the rate of one percent of the applicable first-class fare per kilogram. In determining that the free allowances were unjust and unreasonable because based solely on weight, the CAB in a lengthy historical discussion, found that space, not weight, is the chief component in determining the cost of baggage service.[16]
 
 
 28
 The CAB held that weight may not be the sole determinant for baggage charges but it did not suggest that "weight-related costs should have no bearing...." Order 76-3-81 at 6 (emphasis in original). In fact, the CAB, approved the formula for passenger excess baggage charges of 0.7% of the economy fare per kilogram, which is, of course, a weight, rather than a space-related formula. After approving this formula, the CAB stated in essence that if a carrier proposed that rate as its tariff, it would be treated as presumptively valid and a carrier would not be required to provide economic justification. This policy avoids lengthy hearings.[17] Consequently, when Pan Am and British Airways proposed a rate matching that formula the CAB did not require economic justification.
 
 
 29
 The apparent inconsistency between the CAB's holding regarding free baggage and its approval of a rate for excess baggage using a weight, not a space or volume factor, leads to the complainants' first argument. To find the proper rate for excess baggage, the weight of the bag is multiplied by the approved formula. In Order 77-4-97, the CAB approved a flat rate for excess baggage by multiplying the weight of the average passenger bag by the approved formula. This same process was applied to courier bags. Assuming the average courier bag weighs 2.7 times the weight of a passenger bag, or 30 kilograms, that courier bags could be charged approximately 2.7 times the rate for passenger baggage. The couriers argue that this is impermissible because the tariff is based solely on weight.
 
 
 30
 The couriers argument only follows if in approving the formula the CAB did not take into account the space utilized by a piece of baggage. In the Excess Baggage Case, the CAB had to determine what was a reasonable cost-related charge for excess baggage. Based on a survey, the CAB determined the percentage of the fare allocable to the cost of providing capacity and services for baggage carriage. It then translated that figure to a per kilogram rate formula, a more practical means to determine excess baggage charges than endeavoring to determine cubic measurements. Giving the CAB its due deference regarding "technical knowledge," Las Vegas Hacienda v. C.A.B., 298 F.2d 430, 433-34 (9th Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1158, 8 L.Ed.2d 286 (1962), we believe that the CAB adequately considered space utilization in reaching its formula. Thus, when that formula is applied using a weight factor, it accounts for space. The Excess Baggage Case requires only that weight not be the "sole determinant" and we hold that here it was not.
 
 
 31
 The complainants alternative argument is that the Excess Baggage Case should not be applied to their baggage because it is of a different type than passenger baggage. The Excess Baggage Case concerns the cost of handling passenger baggage. The complainants maintain that their baggage is passenger baggage, but if it is not, as we held above, then the Excess Baggage Case cannot be applied to courier baggage because it is a unique type. That case addressed the cost of handling passenger baggage; it did not develop weight or cost data with respect to courier baggage. Consequently, the couriers argue, it is arbitrary to apply the Excess Baggage Case to this new separate classification courier baggage.
 
 
 32
 We believe that the CAB did not abuse its discretion in applying the formula established in the Excess Baggage Case to courier baggage. Couriers receive the same baggage service as is accorded to a piece of ordinary passenger baggage. The Excess Baggage Case formula was developed to compensate for the cost of this service. Hence, the CAB could reasonably conclude that the formula derived for the cost of handling a piece of excess baggage in general could be appropriately applied to courier baggage. We do note, however, that the Excess Baggage Case also presumes that a carrier, in order to fully cover the costs of its services, might be expected to incorporate into the fare paid by a passenger the cost of moving some amount of baggage. The passenger ticket price compensates the airlines for some baggage handling: the so-called "free baggage allowance." The couriers have alleged that the airlines deny couriers the right to tender courier bags as part of the free baggage allowance. They suggest that this procedure results in the anomaly that a courier traveling with only courier bags will be assessed an extra courier baggage charge on each bag and allowed no free baggage allowance. Differences in the number and weight of courier bags tendered affect the cost to the airline of servicing the courier and justify, as we hold in Part I, distinctions in the rates charged. Such distinctions do not necessarily justify requiring the courier to forfeit completely that portion of his ticket price allocable to free baggage handling. Thus, in addition to the limited evidentiary remand to determine the average weight of courier bags, the Board should review the free baggage allowance and determine what, if any allowance, is available to couriers as part of the passenger ticket price.[18]
 
 III. ANTI-COMPETITIVE RATES
 
 33
 In considering the lawfulness of tariffs, the CAB must consider the statutory goal of the prevention of
 
 
 34
 predatory, or anti-competitive practices in air transportation, and the avoidance of
 
 
 35
 (A) unreasonable industry concentration, excessive market domination, and monopoly power; and
 
 
 36
 (B) other conditions;
 
 
 37
 that could tend to allow one or more air carriers unreasonably to increase prices, reduce services, or exclude competition in air transportation.
 
 
 38
 49 U.S.C. § 1302(a)(7).
 
 
 39
 The courts have also confirmed, though, that:"the (mere) fact that these questions are difficult and important ... does not mean an evidentiary hearing is an essential prerequisite to their satisfactory resolution." As we have said before, there is no statutory requirement for a hearing as a pre-condition to Board approval under Section 412. It is true that in certain cases the anti-trust issues may not lend themselves to a satisfactory disposition without a hearing. But we have made it quite clear that the Board should have a degree of latitude in determining whether a full evidentiary hearing will be necessary in a particular case. In reviewing this determination, this court will not substitute its own view for that of the Board. Rather, the question for us is whether there exist substantial and material disputed issues of fact or whether by refusing to conduct a hearing the Board "denied (itself) the materials requisite for a rational decision."
 
 
 40
 Air Line Pilots Association, International v. C.A.B., 475 F.2d 900, 903-04 (D.C.Cir.1973) (footnote and citations omitted).[19]
 
 
 41
 The complainants contend that they established a prima facie case that the courier baggage tariff is predatory, and, thus, an investigation was required. "Predatory" means any practice which would constitute a violation of the antitrust laws. 49 U.S.C. § 1301(35). They allege that: (1) Pan Am offers a small-parcel express service which directly competes with courier service, and that British Airways plans to offer a similar service; and (2) the airlines possess substantial monopolistic power on many routes. They rely upon Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 275 (2d Cir. 1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), for the proposition that a company violates antitrust laws by using its monopoly power in one market to gain a competitive advantage in another. The complainants maintain that by raising the baggage rates for couriers, the carriers were gaining a competitive advantage for their similar service. The CAB dismissed this allegation because it found that the types of services were not in direct competition.[20]
 
 
 42
 In its brief, the CAB now admits that Pan Am's services do compete with the courier services. Based on the record presented to it, the CAB's failure to find direct competition, however, was not in error. The Pan Am rates cited by the complainants for comparison purposes were Pan Am's rates for airport-to-airport service, not its rates for desk-to-desk service, the service akin to the courier service to which rates were submitted. In desk-to-desk service, documents are picked up at the customer's office and delivered to the address of the recipient. In airport-to-airport service the customer delivers and picks up documents at the airport. Since the complaints failed to produce an evidentiary basis to establish their claim that there was predatory direct competition, the CAB did not abuse its discretion in failing to investigate the complaint.
 
 
 43
 Nevertheless, the CAB, as noted, now admits that there is direct competition. Because of this, and in fairness to the couriers, our affirmance of the CAB's order on this point is without prejudice to the complainants to reopen the anti-competitiveness issue before the CAB. We believe that there should be "suitable opportunity for reconsideration or modification 'in the light of actual experience'." Alabama Power Co. v. Federal Power Commission, 511 F.2d 383, 392 (D.C.Cir.1974). This principle of agency law is not without precedence in the aviation regulation field. See American Airlines, Inc. v. C.A.B., 359 F.2d 624, 633 (D.C.Cir.) (en banc), cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966) ("affirmance of the Board's (CAB's) action is without prejudice to the right of the combination carriers to reopen the question"); Northeast Airlines, Inc. v. C.A.B., 345 F.2d 488, 489 (1st Cir.) cert. denied, 382 U.S. 845, 86 S.Ct. 41, 15 L.Ed.2d 85 (1965) (it is appropriate to remand to the CAB to consider the issue afresh in light of the most recent data).
 
 IV. CONCLUSION
 
 44
 First, we hold that CAB orders 79-1-46 and 79-6-147 are moot and remand to the CAB with directions to dismiss the underlying actions. Second, we hold that the CAB did not abuse its discretion in refusing to investigate the complainants' allegations that Pan Am's and British Airways' courier baggage rates cause unjust discrimination on the alleged grounds that they violate the rule of equality and could not be fairly administered. Next, we affirm the CAB's application of the formula established in the Excess Baggage Case to courier baggage, but remand for a limited evidentiary hearing to establish the average weight of courier baggage and to determine whether some baggage space is purchased as part of the passenger fare. Finally, we hold that the CAB did not abuse its discretion in dismissing the claim that the courier baggage rates were anti-competitive because the complainants failed to establish a prima facie case; but, the complainants have the right to reopen the question in light of subsequent developments.
 
 
 45
 AFFIRMED IN PART and REMANDED IN PART.
 
 
 
 *
 The Honorable Earl B. Gilliam, District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Pan Am filed a number of different tariffs with the CAB pursuant to § 403(a) of the Federal Aviation Act (FAA), 49 U.S.C. § 1373(a), proposing general increases in excess baggage charges not specifically addressed to couriers. The basis for these increased rates was Pan Am's concern with the abuse of the baggage system caused by some passengers who checked large amounts of baggage, preventing Pan Am from carrying baggage or cargo of others. The existing rates encouraged passengers to ship freight as excess baggage because excess baggage charges were substantially lower than the applicable cargo rates
 Although sympathetic to the problems created by courier service, the CAB in general refused to approve the increased charges because Pan Am failed to provide economic justification for the increases. The CAB stated, however, that it would be "receptive to a filing of charges for courier-accompanied baggage based on the Excess Baggage Case formula."
 In CAB Order 76-3-81, decided February 25, 1976, Baggage Allowance Tariff Rules in Overseas and Foreign Air Transportation (Excess Baggage Case), the CAB set guidelines for charging passengers for excess baggage. Because of the lengthy hearings and cost analysis conducted in the investigation of the case, the CAB indicated that tariffs in conformity with the cost formula adopted in the case could be filed without economic justification. Id. at 11. Charges proposing a different rate would have to be accompanied by economic justification. The formula established was a rate of 0.7% of the economy passenger fare per kilogram of baggage. Id. at 8.
 
 
 [2]
 The formula is described in note 1 supra
 
 
 [3]
 Briefly described, courier services provide pick up and delivery service for the fast, reliable shipment of documents and similar items on domestic and international flights. The courier buys a regular airline ticket and tenders the shipment, usually 15-25 bags of documents, as baggage rather than air freight
 
 
 [4]
 DHL's three petitions for review concern: (1) Orders 79-1-6 and 79-6-147 allowing Pan Am to charge 130% of the general commodity rate for courier-accompanied baggage on domestic flights (Petition 79-7416); (2) Orders 80-2-148 and 80-5-32 allowing Pan Am to charge the Excess Baggage Case rate for courier-accompanied baggage on domestic, overseas, and international flights (Petition 80-7133); and (3) Order 80-4-54 allowing British Airways to charge the same rate as Pan Am (Petition 80-7200)
 The initial set of orders permitted Pan Am to increase the charge for courier accompanied baggage on domestic flights to 130% of the general commodity rate. A second set of orders permitted Pan Am to charge courier accompanied baggage at the rate established in the Excess Baggage Case for all domestic, overseas, and international flights. The second set of orders superseded the tariff established by the CAB's previous orders. The CAB contends that the petition appealing the first set of orders should be dismissed as moot. The CAB's position is persuasive. See Continental Air Lines, Inc. v. C. A. B., 522 F.2d 107, 128-30 (D.C.Cir.1975) (en banc) (appeal of CAB order suspending a rate filing was moot where no suspension was presently in effect).
 Cf. Golden Holidays Tours v. C. A. B., 531 F.2d 624, 626 (D.C.Cir.1976). In Golden Holidays, the court noted that some CAB orders, although technically moot, fit into an exception because they were "capable of repetition, yet evading review." This is not such a case because it is unlikely that excess baggage rates will be changed so frequently that they cannot be reviewed. Moreover, any precedential effect of the proceedings is negated because we remand with directions for the CAB to dismiss the underlying actions as moot. See United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) (Supreme Court's established practice in civil cases which have become moot pending decision is to reverse or vacate the judgment below and remand with directions to dismiss).
 When the CAB entered its order allowing the Excess Baggage rate, it stated that because of its action, it expected the ALJ to dismiss the Docket 36063 proceeding. That proceeding was to investigate Pan Am's previously proposed excess baggage tariffs. The CAB served its order on March 4, 1980. DHL filed a petition for review of that order on March 17, 1980. Because the order invited the ALJ to dismiss the pending investigation and dismissal was expected, DHL also petitioned this court to review that action. On March 27, 1980, the ALJ dismissed the action and in Order 80-5-32 dated May 5, 1980, the CAB adopted that decision.
 The question presented is whether this court can review Order 80-5-32 since the petition to review that order was filed before the order was entered. We hold that we have jurisdiction because nothing else remains to be done by the administrative agency and no danger of piecemeal appeal exists. See Anderson v. Allstate Ins. Co., 630 F.2d 677, 680-81 (9th Cir. 1980); see also Continental Air Lines, Inc. v. C. A. B., 522 F.2d 107, 125-31 (D.C.Cir.1975) (en banc) (CAB orders are final where there is every indication that the CAB considered its position final).
 
 
 [5]
 FAA § 404(b), 49 U.S.C. § 1374(b) provides:
 (b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.
 
 
 [6]
 Trailways of New England, Inc. v. C.A.B., 412 F.2d 926, 932 (1st Cir. 1969); Transcontinental Bus System, Inc. v. C.A.B., 383 F.2d 466, 478 (5th Cir. 1967), cert. denied, 390 U.S. 920, 88 S.Ct. 850, 19 L.Ed.2d 979 (1968); Flying Tiger Line, Inc. v. C.A.B., 350 F.2d 462, 465 (D.C.Cir.1965) cert. denied 385 U.S. 945, 87 S.Ct. 316, 17 L.Ed.2d 224 (1966)
 
 
 [7]
 REA Express, Inc. v. C.A.B., 507 F.2d 42, 45-46 (2d Cir. 1974)
 
 
 [8]
 Trailways of New England, Inc. v. C.A.B., 412 F.2d 926, 932 (1st Cir. 1969); see Delta Air Lines, Inc. v. C.A.B., 455 F.2d 1340, 1343 (D.C.Cir.1971)
 
 
 [9]
 Tiger International, Inc. v. C.A.B., 554 F.2d 926, 935-36 (9th Cir.) cert. denied, 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977). See REA Express, Inc. v. C.A.B., 507 F.2d 42, 45-46 (2d Cir. 1974); Delta Air Lines, Inc. v. C.A.B., 455 F.2d 1340, 1343 (D.C.Cir.1971); Trailways of New England, Inc. v. C.A.B., 412 F.2d 926, 932 (1st Cir. 1969); Transcontinental Bus System, Inc. v. C.A.B., 383 F.2d 466, 478 (5th Cir. 1967)
 
 
 [10]
 In CAB Policy Statement 93, the CAB revised its policy on enforcement of the prohibition in section 404(b) of FAA against unjust discrimination, stating the "rule of equality is no longer applicable to the airline industry...." 40 Fed.Reg. 36,060 (1980). The policy statement establishes a higher threshold for finding unreasonable discrimination. Id. The purported basis for this change in policy was the Airline Deregulation Act of 1978. The complainants contend that the dismissal of their complaints was grounded upon the abolition of the rule of equality and that such abolition was not within the CAB's authority because the deregulation act did not alter the statutory proscription of unjust discrimination contained in section 404(b)
 As the CAB points out, however, it did not rely on this policy in issuing Order 80-2-148; it relied on the Excess Baggage Case. The Board relied upon the Notice of Proposed Rule-making DSDR-58, subsequently adopted as Policy Statement 93, to deny reconsideration of the order dismissing DHL's complaint against domestic courier tariffs. See Order 79-6-147 at 15. But we have held that this order is moot. Since it is moot, there is no need to decide whether the CAB had authority to alter its policies on unjust discrimination. We have reviewed this case under the traditional rule of equality.
 
 
 [11]
 The CAB noted:
 Personal baggage is treated as a passenger service and is ancillary to passenger revenue. The cost of handling personal baggage is built into the passenger tariff, relates to the passenger's journey, and reflects the average number of pieces at the density of personal baggage.
 Order 80-2-148 at 3.
 
 
 [12]
 The complainants rely on I.C.C. v. Del., Lackawanna & W.R.R. Co., 220 U.S. 235, 31 S.Ct. 392, 55 L.Ed. 448 (1911) which was reaffirmed in American Trucking Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 387 U.S. 397, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967). The Lackawanna case involved discrimination between types of shippers, one shipping its own goods, the other shipping others' goods. The court noted that the price charged for shipping goods may not depend upon the "mere circumstance that the shipper is or is not the real owner of the goods." 220 U.S. at 252, 31 S.Ct. at 398 (emphasis added). The Lackawanna case is distinguishable because unlike here the discrimination was between those similarly situated, i. e., shippers. Although some ordinary passengers may occasionally tender as many personal bags as couriers do on a regular basis, we believe that airlines may take into account in fixing their rates that most passengers do not do this on a regular basis. In fact, previous surveys indicate that most passengers tender fewer than two bags. See Order 76-3-81 at 7 n.16
 
 
 [13]
 The CAB also noted that courier baggage, at least DHL's, is unique. Order 80-2-148
 
 
 [14]
 DHL does not contend that the 12 kilogram figure is in error, only the 30 kilogram figure
 
 
 [15]
 The counsel for the CAB suggests that assuming there is a 7 kilogram disparity, Gelco could pack its bags to the higher level and thus avoid an injury. This was not a ground relied upon in the Board's decision and we therefore will not accept it. See Nat'l Air Carrier Ass'n v. C.A.B., 436 F.2d 185, 195 (D.C.Cir.1970); Trailways of New England v. C.A.B., 412 F.2d 926, 931 (1st Cir. 1969)
 
 
 [16]
 The CAB stated:
 (Formerly) the technological characteristics of aircraft were such that the weight of the payload had to be restricted to permit long-distance operations. Over time, changes in technology improved the operational characteristics of aircraft to the point where, by and large, the weight of the payload of a full plane does not restrict the range of the aircraft. In other words, the plane runs out of space (i. e., becomes "space-limited") before weight restricts its operation .... No party disputes that today space is more likely to be critical than weight.
 Order 76-3-81 at 3-4.
 
 
 [17]
 Generally every tariff filing must be accompanied by economic justification
 
 
 [18]
 We intimate no view on the resolution of this question, which is properly left for initial consideration by the Board. It may be that the distinctive character and cost of servicing the courier bag require a free baggage allowance somewhat less than that available to the average passenger; or justifies its elimination. We hold only that in the absence of findings based on clearly articulated economic reasons, couriers would seem to be entitled to the benefit of that free baggage service which the cost of passenger tickets is designed to include
 
 
 [19]
 See Air Line Pilots Ass'n, Int'l v. C.A.B., 509 F.2d 964, 966-67 (D.C.Cir.1975); Nat'l Air Carriers Ass'n v. C.A.B., 436 F.2d 185, 191-94 (D.C.Cir.1970)
 
 
 [20]
 The CAB stated:
 Complainants' allegation as to their direct competitive role vis-a-vis Pan American, and their reliance upon the fact that the proposed courier excess baggage charges may be higher than Pan American's freight charges in its Clipper Package Service, are not persuasive. Pan American's freight service is not courier-accompanied, and does not encompass an assurance of origin airport on-time arrival, connecting flights, or customer-door delivery at destination. As to any difference in the price (excess baggage vs. freight) of the underlying direct air transportation which DHL/Gelco must purchase, they are at liberty to adjust their prices accordingly, as are all other air freight forwarders.
 Order 80-2-148 at 2-3.